06-1601 Polyethylene Retail Carrier v. United States Substantial evidence of... I guess what I'm still stumbling over Substantial evidence of substance in evidence that would satisfy a person that this is a reasonable conclusion to draw about the economic situation I think in this circumstance, that's certainly one way to enunciate it, absolutely But I think that in addition to that, one can simply point to the fact that all of the cases that the plaintiffs are discussing, the Lasko case and so forth they talk about whether it's necessary, whether the evidence demonstrated that the price was market determined I think there's one piece of evidence that the plaintiffs actually latch onto that actually indicates that it's much more likely that they were market determined than that they weren't And that is the fact that the supplier that was involved in this contract with Nantan now competes with Nantan for the business of a common United States customer The notion that they would be in cahoots with one another and then compete against each other is not exactly likely. It supports further... There had been a sale to this intermediary Well, there had been, Your Honor, but that's precisely the point is that if these two companies were in fact affiliated as strongly as the petitioner suggests then presumably they wouldn't be at least working against one another affirmatively as soon as their negotiated contract ran out So I think it's one more reason to suspect that... It's one more reason to support the notion that the negotiation that led up to the contract was likely to be an arm's length as well Applying the standard that I hope to have enunciated to the Court's satisfaction to the other cases, to the other issues, let me just address them briefly I'm going to stop for a second to give Mr. Jones his fair due I took him to be arguing that there is a correspondingly greater duty on commerce to provide an explanation where you have essentially a commodity product where, you know, you look in the Wall Street Journal you know what the world market price of this stuff is and that's when you see a disparity of acts, whatever that disparity was You're conceding that there was a disparate price Now Mr. Jones is saying there's a higher duty Does that strike you as unreasonable? It doesn't necessarily strike me as unreasonable but it certainly strikes me as unsupported by the case law I'm not aware of any case that indicates there's a heightened level of scrutiny to be applied with respect to commerce determinations in this area Moreover, there is no statutory basis upon which this Court could rely in order to reach that conclusion Well, but I think, putting words in Mr. Jones' mouth but I think what he would say is that this is where the problem with the disparity is so clear and the market is so easy to establish the market is the kind of market in which the deviations from the market price are so small in that situation, it's almost red-lips-to-longer It's just, it cries out for an explanation and a pretty convincing one so not so much that the burden is higher Besides the fact that you don't want to lose this case and no lawyer wants to lose a case what would be wrong in the old Dublin law situation if we were to rule that, especially where you've got a commodity product like this that there's a duty that requires more work than can be done here we can't tell you exactly how much it's going to be but you're going to have to work a little harder to come up with an explanation that satisfies a reasonable person test for the price discrepancy Assume that Congress passed that statute I don't think the Commerce Department would fight it I don't believe I'm in a position to know Don't you think there could be some salutary effects? Perhaps it might have a salutary effect in other cases, Your Honor but I don't believe it would have any different effects in this case In this case, Congress did The way the law gets made is one party loses usually, or hopefully, the court wants to drive a policy better effectuate some policy that comes up in successive cases Certainly, Your Honor, but I think Your Honor's hypothetical actually made the point to some degree in the sense that if Congress were to change the law certainly, Congress would be under a different obligation but in the circumstances under the statute as they currently exist all that Congress needs to do is demonstrate in this area as well as with the rest of them that substantial action has been met to support this conclusion Just briefly, with respect to the other issues I want to make sure to get to the cardboard insert issue because I don't believe that Hang Long is actually going to have an opportunity to address it and with respect to that issue there is no contradiction on the record contrary to what the plaintiffs are saying If one looks at Joint Appendix page 81 one can see that what the Raleigh response stated was that they used low-grade recycled inserts that is, they used untreated inserts If one looks at page 85 where Raleigh submitted a response along with a bunch of other companies that stated that some companies used untreated some companies used treated and those that used treated inserts used inserts that are of higher quality capable of being used for graphic purposes So that was the hook that the plaintiffs used in order to try and say that more verification was required but no verification would have been required because there is no suspicion that is raised as there is no contradiction I see I'm below four minutes here Well, that's all right I actually have one other question and I won't prejudice the time of your counsel here Were you finished on the cardboard? Yes, Your Honor On the electricity Yes, Your Honor I just want to make sure I understand exactly what's in the numerator and exactly what's in the denominator you understand what I'm talking about It is the electrical charges where the entire electrical charge as I understand it electrical costs for all the production not just the U.S. production was all charged against the U.S. products Is that correct? All bag producing electricity Right, not overhead, not office but bag producing All right, thank you All right, Your Honor Mr. Jones doesn't agree with that at all All right, thank you Everyone is good to sit down again? May it please the Court A couple of points hopefully that will help to blend clarification versus with regard to this idea that the data put forth by petitioners is more compelling First of all, the standard is market-driven and the Department did investigate this issue at verification and did, in fact, verify and investigate market-driven prices by an independent market research firm, Chemies and found that there was a correlation between those market prices and the prices that were negotiated when the market economy was plotted by Nantop Secondly, we would note that in the petitioner's reply brief they called into question this data because it was from 2001 We think this, however, shows the discrepancy in the use by petitioners of their price data and that is the reason that Commerce relied on that 2001 data at verification because that is when the bargain was struck that is when the prices were negotiated that were relevant for the period of investigation and, in fact, the prices that petitioners want to offer are for a time period that were about a year or so following when the prices were negotiated under the contract Also, petitioners raised this idea that there were things that they couldn't bring up because of the BPI claiming that there was this notion of affiliation and we think that there was no indication and no substantial evidence on the record of affiliation or even that they were a significant customer which is how petitioners characterized it In fact, the sales to this market economy supply were a very small percentage of Nantop's overall 2002 sales Finally, we would like to note with regard to the factors of production petitioners also tried to rely on differences between the factors of production reported by Nantop and the respondents We would note that we think this is largely irrelevant for the reasons that we briefed and the fact that the department verified all of the reported information found it to be accurate and credible but, moreover, we would note that the chart offered by petitioners in their brief is inaccurate and is entitled production of T-shirt bags and, in fact, the only it's only Nantop that is the production of T-shirt bags for those factors of production In fact, the other factors of production for the other respondents correspond to six different types of bags and not just T-shirt bags and, therefore, it's outlisted oranges So, we would we would further elect to investigate the production of slips with regard to the factors of production that they put a lot of weight on and just note that there is substantial evidence in the record why the production of slips were in fact in an accurate representation of actual consumption of inputs Thank you and just one what in the world is a T-shirt bag? I wondered about that all the way through Literally a bag that contains T-shirts I thought it might be and I wondered about the cardboard inserts too so I was wondering whether it was the kind of bag that would go around a set of three T-shirts with a cardboard piece that held the T-shirts in place That's essentially Is that it? Very well, thank you Let me clarify one thing A T-shirt bag is not a bag for T-shirts A T-shirt bag is like if you go to the typical your shopping mall or when you get your groceries and they're very thin and have their own handles in it So for instance one of the reasons why we have this situation with Han Long, you should understand this Why is it called a T-shirt bag? Well they call it a T-shirt bag because it looks like an old man's T-shirt and that's why in the trade they will say a T-shirt bag Now why is this kind of important? It is kind of important in one sense because my client Han Long doesn't make them Their target was the T-shirt manufacturers because they produce a lot We produce very high-end shopping bags and we argued that they were separate like products We didn't win on that in the commission but this is what's going on here Your question and the question and the answer from Commerce was correct What happened at verification was simple Basically Commerce could verify the total consumption of all electricity but it couldn't verify the allocation to the U.S. bags So Commerce said in its decision Okay, we're going to use what is not really adverse facts I would call it partial facts available We're going to take the verified information we have, which is total electricity for all bags whether it's the Europe or Hong Kong or whatever and we're going to drop that on the U.S. sales and basically Do we know what percentage of bags in the facility during this consumption period we're going to We've got a pretty If you look at the numbers confidential on our brief you'll see that there's a big difference Like there's a huge number of bags going to other markets and we also broke out by specific canoes the difference in the factor for electricity. This was adverse It was adverse No doubt about it and I think the issue is basically coming down to does the Commerce Department have the discretion to do what it's doing and the issue is is there substantial evidence on the record to support their decision and was it reasonable and I think it was The only other point I'd just make in closing is cardboard. It's not just a hum long issue. This issue cuts across all the respondents and Commerce had to make the decision Yeah, it would go like in a shopping bag It would go in the sides of the sometimes of the shopping bag and in the bottom Makes a solid model Exactly Thank you Mr. Jones You have a couple of minutes left I'm giving you a couple of minutes Let's give Mr. Jones three minutes Thank you Your Honor Going back to your comment There is statutory support for a heightened level of scrutiny The statute requires Commerce to use quote best information available to value the factors of production and what is the best information to value the market price of polyethylene resin given the record in this investigation I was concerned by what Mr. Yarowata would say and in response to I believe it was Judge quote Commerce needs to satisfy itself and I would submit that that is incorrect What Commerce needs to do is make a reasonable inquiry and reasonable determination and in order to satisfy the substantial evidence test in order to satisfy in order to be entitled to Chevron deference what Commerce's determination must be reasonable and what Commerce itself is satisfied is certainly important from their perspective but for purposes of those purposes Is there a future market for polyethylene resin? Is there a future market? Give me a hand I honestly don't know There are published price indices and I don't know how often they are revised There are certainly subscription services that provide that data to all of the players in the market What you have on the record is best information on the prices reported by all the other respondents which all cluster around 5 or 6 percent of the mean price which are consistent with the published price indices published by IsisLore which is a respected consultancy that publishes these prices You certainly have clear evidence of what the market price was during the period of investigation I'd like to address what Mr. Yarowatiker said about the cardboard insert issue and maybe I misunderstood but I think what he said was that Rowley reported that it used untreated, others reported that they used treated, but then in the final determination what our argument is, is if Rowley used untreated cardboard Commerce did not use the Indian tariff classification for untreated cardboard. They erred. They used the tariff classification for treated cardboard We think that they erred in applying that to all of the respondents because there was no evidence to support that any of these respondents used higher quality treated cardboard. No evidence whatsoever unsupported assertion that changed an earlier response to the questionnaire And finally on the electricity issue Let me make sure I understand You're saying that Rowley used I've forgotten which switch you have. Rowley used untreated. Commerce says well others used treated but you say there's no evidence to support that conclusion by me. There was therefore no evidence that these respondents Well what we have on one side is just common sense. Why would you need to use treated cardboard for the insert of a plastic bag? Maybe it wasn't a good idea, but if they did Commerce is saying the others used treated. You're saying that that simply made it up? What we're saying is that there isn't evidence to support that assertion. Commerce did not obtain evidence that supported that determination And what you have on one hand is the common sense notion that you don't need treated cardboard to use as an insert of a plastic bag. And then unsupported assertion, yeah but we used treated inserts. So we think that determination to accept that they used treated inserts is unsupported by substantial evidence because you have countervailing evidence on the other side. I believe my time is up. Thank you very much. Thank you. Let me ask one question because this case presents a problem that we run into in a lot of cases, particularly these kinds of cases with regard to the large amount of material marked confidential. Is there any chance that we can obtain a waiver from the parties of objection to reference to some or all the confidential material in any opinion that we might write because otherwise obviously it becomes difficult to try to navigate our way around these large chunks of confidential bracketed materials. Is there anyone who has is in a position to say that they are the party in interest with respect to the confidential materials and are prepared to waive any objection or to limit the referring to confidential materials in any opinion? For how long? Feel free to generally describe if you don't use a specific number. Okay, so are we really talking about numbers? Perhaps there's one party that was identified as the party from whom I think the resonance obtained. I noticed that was blocked everywhere. Is that true? Your Honor, I don't know if you find this feasible but what I've encountered in the past in the Court of International Trade what's been done is the judge has sent the opinion as it's written without bracketing and said or with the bracketing noted and said we'd like to just not bracket this. Is there any problem with that? And we signed off on that. That's not really something that sort of fits with our we'd have to make a huge change in our modes however anything. But let me see numbers are really what is the concern plus perhaps the identification of that party. Is there anything else that comes to mind that we should steer clear of? The information belongs entirely to the respondent. Right. I can't think of anything else. That's very helpful. Thank you.